The sole question in this case is, whether a meritorious consideration is sufficient in equity to sustain a *Page 371 
promissory note given by a husband to his wife as against his collateral heirs.
The note cannot be sustained as a donatio mortis causa. That is not pretended; nor as a payment for a debt, though that is claimed. But I agree with the Supreme Court, that there is no ground for that claim. If a wife can be said to be entitled to higher consideration or compensation because she labors in the field instead of in her household (which I do not perceive and cannot admit), the law makes no such distinction. It never has recognized the right to compensation from her husband on account of the peculiar character of her services. In most cases she probably contributes more to the happiness of her family by the proper discharge of the delicate and responsible duties of her household, than by any outside labors, however arduous. It is clear that the law regards neither as any consideration for a promise founded thereon from the husband.
Then, is the meritorious consideration arising out of his moral obligation to provide for her reasonable maintenance sufficient to support this note?
Prior to the decision of Ellis v. Nimmo, in 1835 (Lloyd 
Gould's Rep., 333), there were various dicta in the English books, as well as in American reports, to the effect that, in cases of contracts merely voluntary, courts of equity would do nothing; but they did not include therein contracts of a valuable or meritorious consideration. (Pulverstoft v. Pulver, 18 Ves., 84, at 98, in 1811; Ellison v. Ellison, 6 id., 662;Coleman v. Same, 3 Bro. C.C., 12; 1 id., 50; Bunn v.Winthrop, 1 J.C., 329, at 336.) But in Ellis v. Nimmo, Sir Edward Sugden gave the question deliberate consideration, and finally distinctly held that a meritorious consideration, the love of a father for his wife or child, in that case his daughter, was a sufficient consideration to uphold a written agreement for a provision for her, and its specific execution against his heir was decreed accordingly.
The lord chancellor gave the question a good deal of examination and delivered an able opinion. He observed *Page 372 
that it was a singular circumstance that the question had never before been decided.
It was clearly then the first authority to that effect in England, and I think it may be said, with equal clearness, that it was the last.
It has never been followed in the British courts, but its rule has been denied there whenever alluded to. (Holloway v.Headington, 8 Sims., 324; Jefferys v. Jefferys, 1 Crai. 
Phil., 137; Dillon v. Coppin, 4 M. C., 647; Joyce v.Hutton, 11 Irish Ch., 129, in 1860, by master of the rolls, stating the law to be the reverse of that declared in Ellis v.Nimmo; upon a rehearing in Ellis v. Nimmo, before Lord Plunket, successor to Sir E. Sugden, the decree was affirmed,but upon other grounds. This appears by the report of the case.)
Finally, Sir Edward Sugden, in 1846, in reference to that case, remarked that, before that was decided, there was a general impression that a voluntary contract, though meritorious, could not be enforced in this court, and that impression has not been overruled. I drew the distinction between a mere voluntary agreement and a voluntary agreement to provide for a wife or a child — I did not carry it further — which I thought and still think ought to be enforced; but I consider that decision to be overruled by the current of opinion and authority, and I have no desire to support it against the general opinion. (Moore 
Crofton, Janes La Touch's R., at 442.)
We are not referred to any decision in the United States that sustains the respondent's case. There are more dicta to that effect, especially in Kentucky — where it came nearest to being decided, though not necessarily decided, as each case went off upon another ground — but no decision that I am aware of. But in Kentucky the court declare that the "whole foundation of the rule is of doubtful equity." (Buford v. McKee, 1 Dana, 107.)
We are referred to many decisions in other States against this claim.
Philips v. Frye (14 Allen, 36) is a late case. It reviews *Page 373 
the authorities, and holds a mere meritorious consideration to be insufficient. It covers this case in all points.
The decisions in this State are to the same effect. It was at one time held that one's own promise in the shape of a note, without any consideration, was the valid subject of a gift,mortis causa, by the maker. (Wright v. Wright, 1 Cow., 598,) But the law is now well settled the other way. (Craig v.Craig, 3 Barb. C.R., 76, 115; Harris v. Clark, 3 N.Y., 93.)
Duvoll v. Wilson (9 Barb., 487) is an authority directly upon the case at bar.
The cases are reviewed and the conclusion arrived at that a meritorious consideration, or the duty to provide for a wife or child, is not sufficient to support an executory covenant.
There is no decision at war with this in this State.
Hunt v. Johnson (44 N.Y., 27) was a case of an executed sale or transfer of real estate. So the court held, natural affection is confessedly a sufficient consideration to uphold an executed conveyance.
The text-books all substantially agree that a meritorious consideration is insufficient to justify the interference of equity to enforce an executory promise for the benefit of a wife or child.
It seems to me the true policy of the law to avoid giving life in equity to this sort of last will.
It is a method most open to fraud. Although a will requires two witnesses, a note requires none. It requires no great skill so to counterfeit a man's signature as to find witnesses to believe in its genuineness; and a little strength is then added by what is well regarded as the weakest evidence, oral confession, of the deceased.
While a man lives, a legal obligation rests upon him to sustain his wife and children. When he dies, the law declares what is the proper share of his property — the legal and equitable share — that belongs to each of them. If either claim more, the claim should be founded in the law. If it do not allow enough, it may be safely enlarged by statute. *Page 374 
The decree of the Supreme Court and that of the surrogate must be reversed, and the claim of the respondent upon the note disallowed, without costs to either party, and proceedings remitted to surrogate with these directions.
All concur.
Ordered accordingly.